**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **NISHTMAN IZADI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-1510-KC** |
| | § | |
| **MARKWAYNE MULLIN et al.,** | § | |
| | § | |
| **Respondents.** | § | |

## <u>ORDER</u>

On this day, the Court considered Nishtman Izadi's Petition for a Writ of Habeas Corpus, ECF No. 1, and Amended Motion for Temporary Restraining Order ("Motion"), ECF No. 6.

## I.    BACKGROUND

Izadi, a citizen of Iran, arrived to the United States on November 24, 2024, and sought asylum.  Mot. ¶ 4.  She "fled Iran due to persecution on account of her conversion from Islam to Christianity—a crime which is punishable with the death penalty."  *Id.* ¶ 2.  Izadi was detained on arrival and remained detained for the pendency of her removal proceedings.  *Id.* ¶ 5.  On June 18, 2025, an immigration judge granted her withholding of removal under the Convention Against Torture ("CAT").  *Id.*  After this decision, Izadi remained in custody, until May 11, 2026, when the Western District of Louisiana granted her habeas corpus petition.  *Id.* ¶ 6.  The Western District of Louisiana ordered that "Izadi be released under appropriate conditions."  Mot. Ex. C ("R&R"), ECF No. 6-3.  But five days later, on May 16, 2026, Immigration and Customs Enforcement ("ICE") detained Izadi again.  Mot.  ¶ 7.

On May 23, 2026, Izadi's sister, Bayan Izadi, placed the operative Petition in this case in the mail, seeking Izadi's release from custody.  Pet. ¶ 15.  At the time Izadi's sister mailed the

Petition, the ICE Detainee Locator showed that Izadi was detained at ERO El Paso Camp East Montana.  Pet.'s Ex. A, ECF No. 15-1.  On May 29, the Clerk of Court received the Petition and docketed it.  *See generally* Pet.  The Court then ordered Izadi's sister to clarify the circumstances that warranted "next friend" filing, or for Izadi to express her intent to proceed pro se.  June 1, 2026, Order 2, ECF No. 2.

Meanwhile, Izadi's sister hired an attorney, who filed a motion to enforce the judgment for her release in the Western District of Louisiana.  Mot. ¶ 10.  On May 27, 2026, the Western District of Louisiana denied the motion to enforce because it was aware of the current Petition in the Western District of Texas and would "not risk duplicative or conflicting rulings by concurrently entertaining the same arguments."  Mot. Ex. D ("Mem. Order"), ECF No. 6-4.

On June 5, an attorney made an appearance on Izadi's behalf in this case and filed the Amended Motion for a Temporary Restraining Order, arguing that Izadi had been unlawfully re-detained and was likely to be imminently removed to a "third country" without due process.  *See generally* Mot.  She had not been told the country to which she would be removed, much less given an opportunity to raise a fear of torture or persecution there.  *Id.* ¶¶ 9, 12–13.  Izadi also claimed that she had identified an alternative safe country to which she would prefer to be removed—Costa Rica.[1]  *Id.* ¶¶ 16–17.  And that her immigration attorney was in the process of seeking reopening of Izadi's immigration proceedings.  *Id.* ¶ 17.

The Court set this matter for a hearing on June 11, 2026.  June 8, 2026, Order, ECF No. 8.  Ahead of the hearing, Respondents submitted a Declaration from Supervisory Detention and

---

[1] A representative for a community of Quakers in Monteverde, Costa Rica has signed a letter on behalf of their religious organization promising to "sponsor [Izadi's] resettlement here [in Monteverde] by providing her with stable housing and a modest living stipend for a period of up to one year, during which time we will help her to establish a means of supporting herself, learn Spanish, and contribute to the local community."  Mot. Ex. G, ECF No. 6-7.  They also attest to the political feasibility of Izadi's resettlement there, stating that "Costa Rica has forged a new agreement this year to receive persons like Ms. Izadi on removal flights from the United States."  *Id.*

Deportation Officer ("DDO") Michael Robert Avalos.  Resps.' Ex. A. ("Avalos Decl.").[2]  Avalos stated that Izadi was initially scheduled for "a third-country removal flight to the Central African Republic, but the mission was postponed due to health issues in the region."  *Id.* ¶ 7e. Subsequently, on June 3, 2026, Respondents placed Izadi on a manifest for a June 11 removal flight to the Central African Republic, after receiving "credible diplomatic assurances" that she would not be persecuted or tortured there.  *Id.* ¶ 7g; *see also* Mot. ¶ 13.   While the Declaration says nothing about Costa Rica, Respondents' attorney stated during the hearing that he was not aware that the Government had made any attempt to remove Izadi to Costa Rica, or even investigated that possibility.  Instead, he reiterated that they had contacted a number of other countries, including Ghana, Cameroon, Yemen, Libya, Honduras, and El Salvador, before obtaining approval to remove Izadi to the Central African Republic.  *See also* Avalos Decl. ¶ 7e.

As to Izadi's re-detention, Avalos attested that she was detained for failure to comply with her terms of release.  Avalos Decl. ¶ 12.  Specifically, ICE had encountered Izadi at an address on Creciente Way in San Diego, California, that was different than the Pulitzer Place address at which she had purportedly been required to reside pursuant to the Order of Release on Supervision ("OSUP").  *See id.*  Izadi later submitted a copy of the OSUP, however, which lists both the Creciente Way and Pulitzer Place addresses as locations at which she may reside while on supervised release.  Pet.'s Ex. G, ECF No. 18.

Finally, at the hearing, Respondents' counsel also acknowledged that at the time Izadi's sister mailed the Petition, Izadi was detained in El Paso, Texas.  Starting on May 27, 2026, Respondents transferred Izadi through various detention centers, including locations in Texas,

---

[2] Respondents submitted their hearing exhibits to the Court through a cloud-based file sharing platform. *See* Resps.' Advisory, ECF No. 14.   At the time of this Order, the majority of Respondents' exhibits are not available on the CM/ECF docket.

California, and Arizona.  Avalos Decl. ¶ 7f; Pet.'s Ex. E.[3]  Since June 8, Izadi has been detained at the South Louisiana ICE Processing Center in Basile, Louisiana.  Pet.'s Ex. E.

## II.    ANALYSIS

### A.    Jurisdiction

Beginning with jurisdiction, ordinarily, a habeas petition challenging a person's physical confinement must (1) "be filed in the district of confinement" and (2) "name the petitioner's immediate custodian."  *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (citation omitted).  Thus, generally, "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."  *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).  The district of confinement is determined at the time the petition was filed, and subsequent transfers do not divest the court of jurisdiction.  *See Griffin v. Ebbert*, 751 F.3d 288, 290–91 (5th Cir. 2014) (collecting cases).

But "'[t]hese jurisdictional rules for habeas petitions do not implicate the Court's subject-matter jurisdiction and are treated functionally as matters of personal jurisdiction or venue.'"  *Tacuri ex rel. Guanoluisa v. Francis*, 815 F. Supp. 3d 278, 282 (S.D.N.Y. 2025) (citation omitted).  As a result, "the location of the individual at the time a habeas petition is filed is not some dowsing rod pointing to the only correct district.".  *See Fausto O.I. v. Noem*, No. 26-cv-854, 2026 WL 357652, at *3 (D. Minn. Feb. 4, 2026) (citing *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973)).  Instead, there are exceptions to both the immediate custodian and district of confinement rules.  *See, e.g.*, *id.*  When information about where a detainee is held is sparse or hard to locate, or the Government is not forthcoming with the information, courts apply the "unknown custodian" or "unknown district" exception.  *Valdes Acevedo v. Nassau Cnty.*

---

[3] Petitioner's Exhibit E was also submitted through a cloud-based file sharing platform, Mot. Leave, ECF No. 16, and is unavailable on the docket at this time.

*Corr. Ctr.*, No. 26-cv-250, 2026 WL 184645, at *7–8, 11–12 (E.D.N.Y. Jan. 24, 2026). In these circumstances, "the last known district of confinement—on the day in question—is an appropriate place to file a habeas petition." *Flores-Linares v. Bondi*, No. 26-cv-298, 2026 WL 179208, at *4 (E.D.N.Y. Jan. 22, 2026). For this determination, a petitioner—or "anyone 'seeking to act on [their] behalf'"—may "rely on the information available about the location of the petitioner on the day the petition is being filed." *Id.* This is so because "a court is to interpret habeas requirements functionally." *Id.* at *3 (citing *Eisel v. Sec'y of the Army*, 477 F.2d 1251, 1254 (D.C. Cir. 1973)). Underlying these considerations is the principle that there be "no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it." *Guanoluisa*, 815 F. Supp. 3d at 283 (citing *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J. 2025)).

Here, Izadi's sister mailed the Petition to this Court on May 23, because she believed her sister was detained at ERO El Paso Camp East Montana, based on the ICE Detainee Locator information available to her at the time. Pet.'s Ex. A. The Petition was then received and docketed by the Court on May 29. *See generally* Pet. It is now apparent that Izadi was only in El Paso from May 23 until May 27. Resps.' Ex. F, ECF No. 17-1. On May 27, she was transferred to a detention facility in Arizona. And on May 28, she was transferred back to a facility in San Diego, the city where she had been arrested twelve days prior. *Id.* On June 5 or June 7—the record is unclear—Izadi was again sent back to Arizona. *See* Pet.'s Ex. E.; Avalos Decl. ¶ 7h. And on June 8, she was transferred to Louisiana, where she remains. Pet.'s Ex. E. Between the time that Izadi's sister placed the Petition in the mail and the time it arrived at this Court, Izadi had been transferred to a facility in a different district, and by the time her attorneys entered an appearance on June 5, she had been transferred again. In the meantime, those

attorneys had sought to enforce the original habeas judgment for Izadi's release out of Lousiana, and the court there had denied the request in light of the pending Petition here.

In short, Izadi's sister and her attorneys attempted diligently and in good faith to exercise her right to present a petition for writ of habeas corpus to the appropriate jurisdiction.  This attempt was rendered extremely difficult by the peripatetic nature of Izadi's detention.  Especially now that the Western District of Louisiana has declined jurisdiction, maintaining jurisdiction in this Court is the appropriate means to "prevent the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum."  *See Eisel*, 477 F.2d at 1258; *see also Guanoluisa*, 815 F. Supp. 3d at 284; *Fausto O.I.*, 2026 WL 357652, at *4; *Valdes Acevedo*, 2026 WL 184645, at *9.  The Court thus exercises jurisdiction over this Petition.

### B.       Country of Removal

Turning to the merits, Izadi argues that Respondents cannot remove her to "a third country" without providing her with an opportunity to claim fear of removal to that country.  Mot. ¶¶ 12, 19.  She also argues that if she is to be removed, Respondents must first attempt to remove her to Costa Rica before they can remove her to any other country.  *Id.* ¶¶ 16–17.  Respondents intend to remove Izadi to the Central African Republic.  Avalos Decl. ¶ 6.  And argue that she "is not entitled to further process or reasonable fear interview for third-country removal," now that the government of the Central African Republic has provided "credible diplomatic assurances" that Izadi "will not be persecuted or tortured."  *Id.* ¶ 11.

Izadi is a citizen of Iran.  Mot. ¶ 2.  An immigration judge granted her withholding of removal under CAT, meaning that she cannot be removed to Iran because she will likely face torture there.  *Id.* ¶ 5.  But when an immigration judge grants withholding of removal, the

Government is only prohibited from removing the noncitizen to that specific country, and may attempt to remove them to other countries.  *See Johnson v. Guzman Chaves*, 594 U.S. 523, 538 (2021).  Thus, Respondents may continue to seek Izadi's removal to another country by following the statutorily prescribed process for selecting an alternative country of removal.  8 U.S.C. §1231(b)(2)(A)–(E); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008–09 (S.D. Tex. 2025) (collecting cases).  "[T]he statute provides numerous options: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the United States; and finally, any country willing to accept the alien."  *Johnson*, 594 U.S. at 536.

Under the statute, the Government must first attempt to remove a noncitizen who has been granted withholding of removal to "one country" that the noncitizen designates as the country "to which [she] wants to be removed."  8 U.S.C. § 1231(b)(2)(A); *see Sagastizado*, 802 F. Supp. 3d at 1008 (applying § 1231(b)'s rules to "a noncitizen granted withholding of removal from one country"); *Johnson*, 594 U.S. at 536 (same).  Only when a noncitizen cannot be removed to their designated country may the Government choose from among the other options described in *Johnson*.  *See* 8 U.S.C. § 1231(b)(2)(E); *Chaleunphong v. Strafford Cnty. Dep't of Corr.*, No. 18-cv-1096, 2019 WL 13323898, at *4 (D.N.H. June 5, 2019).  And only "if impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause . . ." the noncitizen may be removed to any other "country whose government will accept the alien into that country."  8 U.S.C. § 1231(b)(2)(E)(vii).

During the hearing, Respondents' counsel explained that the Government's designation of the Central African Republic for Izadi's removal was consistent with an internal policy memorandum.  But when pressed, he conceded that Congress appeared to have given removable

aliens a right to designate a country for removal and obligated the Government to attempt removal to the designated country before other third countries.  He also conceded that policy memoranda cannot override statutory mandates.  Indeed, while Respondents' counsel referenced a decision by another court in this District to support the argument that the Government need not provide Izadi with an opportunity to express a fear of removal to the Central African Republic, counsel conceded that the court in that case had noted that the petitioner "refused to identify a third country for purposes of removal."  *See Lopez v. U.S. Immigr. & Customs Enft.*, No. 5:26-cv-1298-JKP, 2026 WL 1549307, at *4 (W.D. Tex. Apr. 23, 2026).

In sum, the law supports the common-sense notion that the Government should first try to remove a deportable noncitizen to a country of their choosing, before it sends them to a country with which they have no ties and where they fear persecution.  And if Costa Rica will accept Izadi, then the question of whether and what process she must receive before being sent to the Central African Republic will be moot.  Therefore, the Court grants the Petition in part and instructs Respondents to attempt to remove Izadi to Costa Rica.  Meanwhile, the remaining issues presented in the Petition are held in abeyance.

### C.    Detention

Lastly, Izadi also seeks her release from confinement.  Pet. ¶ 15.  As discussed, on May 11, 2026, the Western District of Louisiana granted Izadi's habeas petition and ordered that she be "released under appropriate conditions."  R&R 4.  Respondents released her under an OSUP that same day.  Mot. ¶ 7.  Just five days later, on May 16, Respondents re-detained Izadi, purportedly "due to violation of release terms."  Avalos Decl. ¶ 7d.

When a noncitizen is released under an OSUP, the revocation of that release is subject to the provisions of 8 C.F.R. § 241.4(*l*).  Under these provisions, an OSUP may be revoked if the

noncitizen violates the conditions of release. *See id.* § 241.4(*l*)(1). Upon revocation, the noncitizen must be notified of the reasons for such revocation and given an opportunity to respond. *Id.* Therefore, re-detaining Izadi without any violation of release conditions would amount to a violation of federal regulations, as well as the Western District of Louisiana's order.

As discussed, the purported violation here was Izadi's failure to reside at her reported address, which Avalos stated was on Pulitzer Place in San Diego. Avalos Decl. ¶ 12. Respondents claim that she was instead residing at a different address on Creciente Way. *See id.* At the hearing, Izadi's counsel claimed that the OSUP designated both the Pulitzer and Creciente addresses as locations at which Izadi could reside, and that she therefore did not violate her terms of release. Izadi submitted the OSUP as an exhibit, which shows both addresses. Respondents' counsel admitted that they had not reviewed the actual OSUP. After doing so, they made no argument and offered no additional evidence of any violation of Izadi's conditions of release. Because it now appears uncontested that Izadi was found at an address at which she was permitted to reside under the terms of her OSUP, there is no evidence of a violation. *See, e.g., Villanueva v. Tate*, 801 F. Supp. 3d 689, 699–700 (S.D. Tex. 2025).

Accordingly, Izadi must again be released from custody under reasonable conditions of supervision.[4]

## III.   CONCLUSION

---

[4] Izadi's release does not moot this habeas proceeding, as the "'in custody' inquiry is made at 'the time the petition was filed." *See Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 161 n.6 (3d Cir. 2018) (quoting *Spencer v. Kenma*, 523 U.S. 1, 7 (1998)). "[H]abeas jurisdiction is not limited 'to situations in which the applicant is in actual physical custody.'" *See Portillo v. Bharara*, 527 F. App'x 48, 50 (2d Cir. 2013) (quoting *Justices of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 295 (1984)). At least where, as here, "release is 'not unconditional.'" *Osorio-Martinez*, 893 F.3d at 161 n.6 (quoting *Maleng v. Cook*, 490 U.S. 488, 491 (1989)). Izadi remains removable from the United States and can be re-detained if she violates a reasonable condition of her OSUP. Furthermore, if removal to Costa Rica proves impossible, then the Court will have to take up the issue of whether and what additional process is required before Izadi can be removed to the Central African Republic or another third country. Thus, a live habeas controversy remains pending.

Accordingly, Court **ORDERS** that the Petition, ECF No. 1, is **GRANTED in part**. Respondents shall **RELEASE** Izadi from custody under reasonable conditions of supervision, **by no later than June 16, 2026.**

**IT IS FURTHER ORDERED** that, **on or before June 16, 2026**, Respondents shall **FILE** notice informing the Court whether Izadi has been released from custody in compliance with this Order.

**IT IS FURTHER ORDERED** that Respondents shall **COORDINATE** with the appropriate departments or agencies to **ENSURE** that the United States Government communicates a formal inquiry to the Government of Costa Rica, asking whether they will accept Izadi for removal to that country, **by no later than July 13, 2026**.

**IT IS FURTHER ORDERED** that, **by no later than July 13, 2026**, Respondents shall **FILE** notice with the Court detailing their compliance with the preceding paragraph and informing the Court of any response received from Costa Rica.

**IT IS FURTHER ORDERED** that the Court **HOLDS IN ABEYANCE** any determination as to what process is required before Respondents may remove Izadi to the Central African Republic, or any other alternative third country, until a determination is made as to Costa Rica.

**IT IS FURTHER ORDERED** that the Court's June 8, 2026, Order preventing Respondents from removing or deporting Izadi from the United States, until the Court orders otherwise or this case is closed, is **MODIFIED** such that **Izadi may be removed to Costa Rica, only**.  **The order preventing Izadi's removal or deportation otherwise REMAINS IN EFFECT**.

10

**IT IS FURTHER ORDERED** that if Izadi's motion to reopen her immigration proceedings is granted, Petitioner shall promptly **FILE** notice of such with the Court.

**IT IS FURTHER ORDERED** that Izadi's Motion for TRO, ECF No. 5, and Amended Motion for TRO, ECF No. 6, are both **DENIED as moot**.

**Barring exceptional circumstances, there will be no extensions of the deadlines set in this Order**, unless they fall on a weekend or holiday, in which case, the deadlines are extended to the following business day.

**SO ORDERED**.

**SIGNED this 12th day of June, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE